## Rowlett v. Louisville & N. R. Co.
### Lewis v. Same.

(Decided Oct. 16, 1934.)

WILLIAM A. EARL for appellants.

TRABUE, DOOLAN, HELM & HELM, JAMES P. HELM, Jr., and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Arthur J. Rowlett and William A. Lewis have instituted separate actions against the Louisville & Nash-

ville Railroad Company, each seeking to recover the sum of $3,505.50 as an alleged balance due them from the railroad company for services rendered in the capacity of both brakeman and fireman. The cases were heard together, and, at the conclusion of the evidence for plaintiffs, the court sustained a motion for a peremptory instruction in favor of defendant in each case, and plaintiffs are prosecuting an appeal. The appeals are brought up on one record, and, since the facts and circumstances are identical, they will be disposed of in one opinion.

In each petition it is alleged that plaintiffs, appellants here, worked continuously for appellee from May 1, 1927, up to and including May 31, 1932, in the joint capacity of porter and brakeman on its passenger trains; that appellants received pay as porters on passenger trains only, at the rate of $90 per month or a total of $5,130; that on or about February 1, 1927, and while appellants were in the employment of appellee, working in the joint capacity of train porter and brakeman, appellee made a contract and working agreement with the Brotherhood of Railroad Trainmen working for it, which contract was and is embodied in book form, a copy of which is filed with and made a part of the petition. They set out and rely on article 10 of the agreement which reads:

"(a) Trainmen, working in two or more classes of service on same trip between terminals, will be paid for all work done at the highest rate applicable to any class of service in which they have been engaged; time on such trips to be continuous from time they are ordered to report at terminal until relieved on arrival at terminal, or in accordance with other conditions of this Agreement. * * *"

They allege that because of having performed the joint service of both porter and brakeman on passenger trains for the time indicated, they are entitled to a brakeman's wage of $151.50 per month for such period amounting to $8,635.50, and they pray for judgment for the difference between that sum and the sum paid to them or the balance above indicated.

Demurrers to the petitions having been overruled, the company filed answer in the first paragraph of which it denied the allegations of the petitions with respect to

appellants working in the joint capacity of porter and brakeman or that they ever worked in the capacity of brakeman. In a second paragraph it alleged that the agreement between it and its employees, referred to and filed with appellants' petition, was an agreement between it and its trainmen and yardmen; that the word "trainmen" referred to therein applied only to "yard foremen, or yard conductors, switchmen, brakemen, flagmen, baggage men and switch tenders or herders," and did not include train porters as is evidenced by article 29, subsection 2, of the agreement which reads:

"Exclusive train porters do not come within the provisions of this agreement."

The evidence discloses that appellants were employed as train porters and served in that capacity during all the time referred to in their pleadings; that while during their period of employment they discharged duties usually performed by the head brakeman on passenger trains, they did not claim or hold themselves out to be brakemen, nor were they treated or regarded as such by appellee.

They testified that they annually or at least periodically underwent examinations to test their hearing and sight, especially their ability to distinguish colors, but that they never took any other examination to test their qualifications to act in the capacity of brakeman; that all porters on their division of the railroad did the same kind of work they did; and that all of them were paid as porters and were regarded as such. They further testified that they knew no difference until they saw an article in a paper indicating that they were entitled to pay as brakemen. Appellants received semi-monthly checks for their salaries, which on their faces provided that it constituted, "receipt in full for amount due said payee for services rendered the Louisville & Nashville Railroad Company."

As supporting their contention that appellants are entitled to recover pay as brakemen for the full term sued for and that the court erred in directing a verdict for appellee and entering judgment in conformity therewith, counsel rely on the case of Yazoo & M. V. R. Co. v. Sideboard, 161 Miss. 4, 133 So. 669, 670. In that case it appears that Sideboard, a colored man, entered the employment of the railroad company as freight brakeman in October, 1910, in which capacity he served until

transferred to the passenger service four years later; that continuously from 1914 until 1928 he performed joint duties of porter and brakeman on passenger trains. During the period of federal control of railroads, the director general of railroads promulgated an order which in part reads:

"(1) Employees in a passenger train crew, except conductors, collectors and baggage masters, qualified and regularly required to perform the following essential duties, will be designated as passenger brakemen or flagmen and paid accordingly."

This was followed by an enumeration of duties usually performed by brakemen and flagmen.

Following the termination of federal control, the Brotherhood of Railroad Trainmen, composed exclusively of white men, entered into a working agreement with the railroad company and, as a part of such agreement, included the rules issued by the director general of railroads as above stated, and these rules were also carried into a subsequent agreement, which also contained a provision to the effect that it should apply to white and colored employees alike. After the date upon which the federal order became effective and up to February 17, 1925, Sideboard, as stated in the opinion, "was regularly required to perform, and did perform, the essential duties of a brakeman as mentioned therein, and was at all times designated as a brakeman, and was paid brakeman's wages, and was repeatedly adjudged as qualified so to do by regular examinations passed by him."

On the latter date, the railroad company, deciding that Sideboard was not entitled to the benefits of the contract, notified him that on and after March 26, 1925, he would not be paid as a brakeman, but would receive wages as a porter. He continued in the service and was required to and did perform the same services as he had theretofore performed, but received checks for a porter's pay, which bore on their face the stipulation that they were in full for services rendered by him. These checks were accepted and cashed by Sideboard up to March 1, 1927, but during all the time he was receiving the lesser pay, he and other porters were protesting against the reduction and appealing to the company for a recognition of their rights to receive pay as brakemen. After March 1, 1927, he declined to accept or cash

any further pay checks, and, on March 14, 1928, he was discharged from the service of the company.

Without going into detail, it was held in effect that while Sideboard was not a party to the contract, it was made for his benefit and he was entitled to recover thereunder, however, it was further held that in the proven circumstances, his acceptance of checks bearing a notation "in full services rendered," constituted accord and satisfaction and precluded recovery for the difference between the amount of such checks and the sum to which he might have been entitled under the working agreement with the railroad company.

Here an entirely different situation is presented. The trainmen's agreement filed with and made a part of appellants' petition does not embody, as a part thereof, the rules promulgated by the director general of railroads or any provisions of similar effect or import. On the contrary, it specifically defines the classes of service to which it applies and expressly excludes from its provisions train porters.

The conclusion therefore is inescapable that since appellants are not parties to the contract and it was not made for their benefit, they are not entitled to maintain their actions thereunder and the lower court correctly sustained appellee's motion for a directed verdict.

This conclusion renders it unnecessary to consider or discuss the effect of appellants having received checks for pay as train porters with the stipulation as above indicated.

Judgment affirmed.